UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CATHERINE O'KEEFE,

Plaintiff,

v.

HOLLAND AMERICA LINE INC., et al.,

Defendants.

CASE NO. C22-1111-KKE

ORDER GRANTING MOTION TO COMPEL

This matter comes before the Court on two motions: (1) a motion to compel arbitration and dismiss this action filed by Defendants Holland America Line Inc., HAL Maritime Ltd., Holland America Line N.V., and HAL Antillen N.V. (collectively "HAL"); and (2) a motion to remand this action to King County Superior Court filed by Plaintiff Catherine O'Keefe. Dkt. Nos. 3, 12.[1] The Court has considered the motions, all materials submitted in support of and in opposition to the motions, the oral argument of counsel, and the governing law. For the following reasons, the Court grants HAL's motion and denies O'Keefe's motion as moot.

[1] In this Order, the Court uses the CM/ECF page numbers when citing to the parties' briefing.

## I. BACKGROUND

O'Keefe filed this action for relief related to personal injuries she suffered during her employment on a vessel owned and operated by HAL. *See generally* Compl. (Dkt. No. 1-1). Below, the Court sets forth the factual and procedural background relevant to the parties' motions.

O'Keefe worked for HAL from 2006 until 2014, most recently as an executive housekeeper. Dkt. No. 25 ¶¶ 6–8. She signed a new employment contract each time she started a new employment period with HAL. *Id.* ¶ 9; *see also id.* ¶ 7 (stating that it was HAL's practice to send her a contract approximately one month before the beginning of a contract period).

In approximately December 2013, HAL e-mailed O'Keefe a Seagoing Employment Agreement ("SEA") to join the M/S Zuiderdam in South Florida from January 13, 2014, to June 14, 2014. Dkt. No. 25 ¶ 7. She signed the SEA on January 13, 2014. *Id.* ¶ 8.

In relevant part, the January 2014 SEA includes the following language, which incorporates language from a November 2011 document:

> SEAGOING EMPLOYMENT AGREEMENT-DAILY RATE TERMS AND CONDITIONS (NOVEMBER 10, 2011 VERSION) APPLY TO, AND ARE AN INTEGRAL PART OF, THIS AGREEMENT. BY SIGNING BELOW, YOU ACKNOWLEDGE HAVING BEEN AFFORDED THE OPPORTUNITY TO REVIEW THE TERMS AND CONDITIONS WHICH ARE AVAILABLE ON: [an internet site and the company's intranet system].
>
> YOU SPECIFICALLY ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO THE ARBITRATION PROVISION CONTAINED IN SECTION 9A OF THE TERMS AND CONDITIONS.
> YOU FURTHER ACKNOWLEDGE THAT YOU HAVE BEEN AFFORDED AN OPPORTUNITY TO SEEK ADVICE ON THIS AGREEMENT BEFORE SIGNING IT.

Dkt. No. 34-2 ("January 2014 SEA"). O'Keefe's November 2011 SEA states, in relevant part:

> Your employment may be subject to the terms and conditions of a Collective Bargaining Agreement in which event such agreement, including any terms which establish rates for maintenance payments, shall be binding on you and us as though fully incorporated herein.

> Any disputes whatsoever relating to or in any way arising out of this Agreement or your service onboard a ship, including but not limited to wage disputes, property damage, personal injury, death, or any other claim, shall be governed exclusively by the laws specified in the applicable Collective Bargaining Agreement or government-mandated contract. In the absence of any such Agreement or specification, such disputes shall be governed in all respects by the Laws of the British Virgin Islands. You hereby agree . . . that any disputes shall be arbitrated, if at all, exclusively according to the terms specified in any applicable Collective Bargaining Agreement or government-mandated contract. **In the absence of such Agreement, terms or contract, all such disputes no matter how described, pleaded or styled, shall be resolved by binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), . . . exclusively in your country of citizenship or, if your home country is not a party to the Convention, then in Seattle, Washington.**

Dkt. No. 34-3 ("November 2011 Terms and Conditions"), Section 9A.

On April 3, 2014, O'Keefe was sent ashore to receive a medical examination and treatment for an asthma attack. Dkt. No. 25 ¶ 10; *id.*, Exs. 3 & 4. When she returned to the vessel after approximately ten days ashore, she recalls that the vessel's human resources manager handed her a piece of paper and told her to sign it. *Id.* ¶ 15. She does not recall "giving [the document] any thought, nor indeed specifically reading it." *Id.* She also does not remember being told that it was a new contract and was not provided a copy of the contract. *Id.*

As it turns out, the paper she was asked to sign was another SEA, this time for a voyage on the M/S Zuiderdam from April 14, 2014, to June 14, 2014. Compl. ¶ 3.1; Dkt. No. 1-2 ("April 2014 SEA"). The language in the April 2014 SEA is nearly identical to the language of the January 2014 SEA, with one exception: the April 2014 SEA refers to a February 2014 version of the Seagoing Employment Agreement-Daily Rate Terms and Conditions ("February 2014 Terms and Conditions"), rather than the November 2011 version of the same. *Compare* April 2014 SEA *with* January 2014 SEA. The language of Section 9A of the February 2014 Terms and Conditions, meanwhile, is identical to the language of Section 9A of the November 2011 Terms and

Conditions. *Compare* Dkt. No. 1-3 ("February 2014 Terms and Conditions"), Section 9A, *with* November 2011 Terms and Conditions.

On April 23, 2014, O'Keefe was accompanying the vessel's hotel director to a shipboard meeting when she tripped over a brass threshold plate that was protruding above the deck surface and fell, injuring her knee. Compl. ¶ 3.10; Dkt. No. 25 ¶ 16. She received treatment onboard the vessel and a shoreside referral for an MRI. Dkt. No. 25 ¶ 17. Rather than sign O'Keefe off the ship for treatment for her injury, however, HAL required her to continue working until the end of her contract on June 14, 2014. *Id.* ¶ 18; Compl. ¶ 3.11. O'Keefe subsequently underwent a knee replacement. Compl. ¶ 3.12.

O'Keefe contends that HAL did not provide her any maintenance and cure while she was receiving treatment in Florida for her knee injury despite her repeated requests for the same. Dkt. No. 25 ¶ 19. She was unemployed "for a long time" because of her injury and exhausted her savings to pay for treatment and living expenses. *Id.* ¶ 20. In 2019, she found employment at Publix Super Markets. *Id.* As of October 2022, she was employed as a grocery clerk earning $16.40 per hour and working approximately 24 hours per week. *Id.*

In 2014, when she signed the agreements discussed herein and suffered her injury, O'Keefe was a citizen of the United Kingdom and had been a permanent resident of the United States since 1983. Compl. ¶ 2.1; Dkt. No. 25 ¶ 4. She applied for United States citizenship "prior to the outbreak of the COVID pandemic" and was granted United States citizenship on November 15, 2022. Dkt. No. 32 ¶¶ 2–6, Ex. 1.

O'Keefe filed her complaint in King County Superior Court on April 15, 2022. *See* Compl. at 1. She asserts claims for negligence under the Jones Act, 46 U.S.C. § 30104; unseaworthiness; failure to provide maintenance and cure; and failure to treat. *Id.* ¶¶ 4.1–7.6.

HAL removed the action to this Court on August 9, 2022. Dkt. No. 1. HAL asserts that this action is removable pursuant to 9 U.S.C. § 205, which provides for the removal of state court proceedings that relate to arbitration agreements or awards that fall under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958) ("the Convention"). *Id.* ¶ 13 (citing 9 U.S.C. § 205).

HAL filed a motion to compel arbitration and dismiss O'Keefe's complaint the same day it removed the case to this Court. Dkt. Nos. 1, 3. O'Keefe subsequently moved to remand this case, asking the Court to reserve ruling on the motion to remand until after it resolves HAL's motion to compel arbitration, and acknowledging that if the Court grants the motion to compel, her motion to remand is moot. Dkt. No. 12 at 3–4; *see* Dkt. No. 40 at 1 ("If the Court grants the Defendants' motion to compel arbitration, the motion to remand is moot."). Both parties repeatedly re-noted their motions over the next several months.[2] *See* Dkt. Nos. 14–16, 19–20, 22–23, 28–30. Both motions have now been fully briefed and are ripe for decision.

---

[2] HAL originally based its notice of removal, motion to compel, and opposition to O'Keefe's motion to remand on an arbitration provision in O'Keefe's April 2014 SEA. According to HAL, the agreement is subject to the Convention — and removable under 9 U.S.C. § 205 — because its incorporated Terms and Conditions require O'Keefe to submit her claims to arbitration in the United Kingdom: her country of citizenship when she signed the agreement, when she was injured, and when she filed this matter in this court. Dkt. No. 1 ¶¶ 2, 8–13. In her response to the motion to compel, O'Keefe argued that the April 2014 agreement was void for lack of consideration because the January 2014 SEA already covered the same contract period. *See, e.g.*, Dkt. No. 31 at 2–3, 5–9. Neither party, however, possessed the January 2014 agreement when they filed their motions and when O'Keefe responded to the motion to compel. HAL, however, found the January 2014 SEA after O'Keefe filed her response. It attached the January 2014 SEA and the terms and conditions that applied to that agreement to its reply in support of its motion to compel and its response to O'Keefe's motion to remand. *See* Dkt. Nos. 34, 39. In both briefs, it argues that this action is removable and subject to arbitration under the Convention and 9 U.S.C. § 205 regardless of whether the January 2014 SEA or the April 2014 SEA was in effect when O'Keefe suffered her injury. *See* Dkt. Nos. 34, 39.

O'Keefe then filed a surreply in which she moved the court to strike the new exhibits and all arguments referring to them because HAL had previously asserted that it did not possess a copy of the January 2014 SEA. Dkt. No. 38 at 1–5; *see also* Dkt. No. 39 at 4. The Court denied the motion to strike but granted O'Keefe leave to file a supplemental brief to address "the validity of the January 13, 2014 agreement and its significance to the questions of removability and arbitrability at issue in this case." Dkt. No. 44. O'Keefe filed her supplemental brief on May 5, 2023. Dkt. No. 55.

## II. ANALYSIS

O'Keefe concedes that removal is appropriate unless the Court determines that the underlying arbitration agreement is unenforceable.[3] *See* Dkt. No. 12 at 1 (stating that she "moves for the Court to remand this matter to state court if the motion to compel arbitration is denied"); *id.* at 4 (noting that Jones Act cases filed in state court are not removable unless an alternative basis for federal jurisdiction exists); Dkt. No. 40 at 1, 4 (conceding that if the court grants HAL's motion to compel arbitration, her motion to remand is moot). Therefore, the Court turns first to HAL's motion to compel arbitration.

### A. The Arbitration Agreement is Governed by the Convention.

International arbitration agreements, like the one in this case, are subject to the Convention. The United States is a signatory to the Convention and implemented it through the enactment of Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 901–908. *GE Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, Inc.*, 590 U.S. ---, ---, 140 S. Ct. 1637, 1644 (2020). The Convention requires signatory states "'[to] recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them[.]'" *Id.* (quoting Convention, Art. II(1)). Article II, Section 3 of the Convention provides that "[t]he court of a Contracting State . . . shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." Convention, Art. II(3); *see GE Energy Power*, 140 S. Ct. at 1644 (discussing Article II of the Convention); *see also* 9 U.S.C. § 206 (empowering courts to compel arbitration according to the terms of foreign arbitration agreements).

---

[3] As discussed herein, O'Keefe signed January 2014 and April 2014 SEAs. HAL moved to compel arbitration based on the April 2014 SEA, and O'Keefe argued that the January 2014 SEA had not been terminated and was therefore still in effect at the time she signed the April 2014 SEA. *See* Dkt. No. 31 at 6. Because the arbitration agreements in the January 2014 SEA and April 2014 SEA are identical, the Court need not determine which arbitration agreement was in effect at the relevant time and this Order refers to the "arbitration agreement" in the singular.

The Convention applies to "an arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial[.]" 9 U.S.C. § 202. Courts "generally address four factors to determine whether to enforce an arbitration agreement under the Convention." *Balen v. Holland America Line, Inc.*, 583 F.3d 647, 654 (9th Cir. 2009). The Convention applies when

> "(1) there is an agreement in writing within the meaning of the Convention;
> (2) the agreement provides for arbitration in the territory of a signatory of the Convention;
> (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and
> (4) a party to the agreement is not an American citizen, or . . . the underlying commercial relationship has some reasonable relation to one or more foreign states."

*Id*. at 654–55 (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005)). If the agreement satisfies these four Convention factors, then a court must order arbitration unless the agreement is "null and void, inoperable or incapable of being performed." *See Balen*, 583 F.3d at 654. Thus, the Court will first consider the four Convention factors, and then turn to consider whether there is a basis to void the agreement.

**B. The Arbitration Agreement Satisfies the Four Convention Factors.**

HAL argues that the Convention applies to the arbitration agreement because all four factors are satisfied, and O'Keefe does not dispute HAL's arguments with respect to the application of the four factors. *See* Dkt. Nos. 31, 37.

The Court agrees with HAL that the four factors are satisfied: First, the agreements at issue are in writing. *See* January 2014 SEA (incorporating language from the November 2011 Terms and Conditions); April 2014 SEA (incorporating language from the February 2014 Terms and Conditions).

Second, the agreement provides for arbitration in the United Kingdom: the country in which O'Keefe was a citizen when she signed the SEAs, suffered her injury, and filed this lawsuit. *See* November 2011 Terms and Conditions, Section 9A (stating that arbitration would take place "exclusively in your country of citizenship or, if your home country is not a party to the Convention, then in Seattle, Washington"); February 2014 Terms and Conditions, Section 9A (same); Dkt. No. 25 ¶¶ 4, 16; Dkt. No. 32 ¶ 6; Dkt. No. 1-1. The United Kingdom has been a Convention signatory since December 23, 1975. *See* Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958), *available at* https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited December 11, 2023).

Third, the agreement arises out of a commercial legal relationship. *See Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1155 (9th Cir. 2008) (finding that seafarer employment contracts arise out of legal relationships which are "considered as commercial").

And finally, at least one of the parties to the arbitration agreement was not a citizen of the United States at the time of contracting. *See, e.g.*, Dkt. No. 1 ¶ 3.

The Court thus concludes that the Convention applies to the agreement at issue here, and that the Court must refer this matter to arbitration unless O'Keefe can show that the agreement is "null and void, inoperative or incapable of being performed." Convention, Art. II(3).

**C.    The Arbitration Agreement is Not Null and Void, Inoperative, or Incapable of Being Performed.**

O'Keefe opposes HAL's motion to compel, arguing that the Court should decline to enforce the arbitration agreement because (1) the April 2014 SEA is void for lack of consideration, and (2) the arbitration agreement should not be enforced because it is contrary to public policy as

enshrined in federal statutory law and would lead to unconscionable results. The Court will address each argument in turn.

*1. The April 2014 SEA is Not Void for Lack of Consideration.*

O'Keefe argues that the April 2014 arbitration agreement is void for lack of consideration because the January 2014 SEA was still in effect when she signed the April 2014 SEA, and the new contract provided no new compensation and changed none of her employment terms. Dkt. No. 31 at 4–8. As noted *supra*, however, both 2014 versions of the SEA and their associated terms and conditions include the same language regarding arbitration, and therefore regardless of which SEA was in effect when O'Keefe suffered her injury, the result is the same. O'Keefe's argument regarding consideration is therefore ineffective in allowing her to avoid the arbitration provision.

*2. O'Keefe's Additional Arguments are Premature.*

When a court considers whether to enforce an arbitration agreement governed by the Convention, the party opposing enforcement has the burden to show that the agreement is "null and void" due to fraud, mistake, duress, and waiver or other standard breach-of-contract defenses "that can be applied neutrally on an international scale." *Bautista*, 396 F.3d at 1302 (cleaned up); *see also Bogicevic v. Seaborn Cruise Line Ltd.*, 580 F. Supp. 3d 970, 976–77 (W.D. Wash. 2022).

Here, O'Keefe's challenges to the enforceability of the arbitration agreement do not fall into that category. O'Keefe contends that certain provisions in the agreement lead to unconscionable results, specifically the provisions requiring application of British Virgin Islands ("BVI") law and forcing her to arbitrate in the United Kingdom.[4] Dkt. No. 31 at 9–20, 22–24.

[4] At oral argument, counsel for HAL expressed a willingness to stipulate that the arbitration would be conducted by an arbitrator in the United Kingdom, but that the parties could attend remotely via videoconferencing with the assistance of their U.S. counsel. O'Keefe's counsel responded that he was uncertain that U.S. counsel would be permitted to participate in a foreign arbitration and that he has not participated in one himself.

According to O'Keefe, she would be unable to pursue her claims that arise under U.S. law if the arbitrator must apply BVI law, and she also contends that participating in a U.K. arbitration is cost-prohibitive. *See id*. But, as HAL notes (Dkt. No. 34 at 13), such arguments are properly directed toward the arbitrator in the first instance, given that O'Keefe agreed to arbitrate all disputes related to the arbitration agreement. *See* February 2014 Terms and Conditions, Section 9A. Under that delegation clause, it is for the arbitrator to decide whether to enforce the choice-of-law provision in the arbitration agreement. *See Wash. Schools Risk Mgmt. Pool v. Am. Re-Insurance Co.*, No. C21-0874-LK, 2022 WL 2718479, at *8–9 (W.D. Wash. Apr. 21, 2022). The arbitration agreement does not specify how costs will be allocated, and O'Keefe will have an opportunity to raise that issue with the arbitrator as well.[5]

Furthermore, HAL emphasizes that if, at the conclusion of arbitration, O'Keefe is unsatisfied with the outcome, she can move to reopen this case and challenge it the under the public policy exception in Article V of the Convention. Dkt. No. 24 at 13. That exception is not available at the enforcement stage of the proceedings, where this case is currently situated, but can be raised in a post-award challenge. *See, e.g.*, *Wash. Schools Risk Mgmt. Pool*, 2022 WL 2718479, at *5 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638 (1985); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 372 (4th Cir. 2012); *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1237, 1280 (11th Cir. 2011)).

For these reasons, the Court finds that the arbitration agreement is governed by the Convention, and that O'Keefe has not shown that the agreement is null and void, inoperable, or incapable of being performed. Mindful of the obligation to address questions of arbitrability "with

---

[5] At oral argument, HAL's counsel indicated that in his experience, cruise lines are often required to front the cost of foreign arbitration and any subsequent award to seamen is offset to cover their portion of costs.

a healthy regard for the federal policy favoring arbitration," the Court grants HAL's motion to compel. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). O'Keefe's motion to remand is therefore moot.

## III. CONCLUSION

For the reasons explained here, the Court GRANTS HAL's motion to compel (Dkt. No. 3) and O'Keefe's motion to remand (Dkt. No. 12) is DENIED AS MOOT. The parties are ORDERED to proceed with arbitration in accordance with the terms of the arbitration agreement, and the clerk is DIRECTED to close this case. Either party may move to reopen this matter upon a showing of good cause.

Dated this 11th day of December, 2023.

Kymberly K. Evanson
United States District Judge